**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 2:14-CV-14420 ROSENBERG/LYNCH**

WAUSAU UNDERWRITERS INSURANCE
COMPANY and THE FIRST LIBERTY
INSURANCE CORPORATION,

      Plaintiffs,

v.

DANFOSS, LLC,

      Defendant.

_____/

**PARTIAL ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

**THIS CAUSE** comes before the Court on Plaintiffs' Motion to Dismiss Defendant's Counterclaim with Prejudice [DE 45] filed August 19, 2015, and Plaintiffs' Motion for Summary Judgment [DE 48] filed September 2, 2015. The Court held a hearing on both motions on October 23, 2015. *See* DE 79. These motions, as well as the responses and replies thereto, *see* DE 51, 56, 62, 69, 71, reveal a disagreement between the parties as to what law governs this dispute.

This case was filed by Plaintiffs as a breach of contract action to recover unpaid insurance premiums. Defendant has defended and counterclaimed on the grounds that Plaintiffs improperly raised those premiums in bad faith. Plaintiffs' pending motions argue that Defendant's defense and counterclaim are barred, under Florida law, because Defendant failed to exhaust administrative remedies for challenging the calculation of premiums. Defendant responds that such exhaustion was not required, because Florida law does not apply to this dispute. The parties make various arguments as to why Florida, Maryland, or New York law

1

should be applied here, whether each of these jurisdictions have administrative remedies for challenging premium calculations, and whether Defendant's failure to exhaust such remedies bars its claims or defenses. Accordingly, in order to resolve this threshold issue, the Court finds it necessary to determine what law governs. As set forth more fully below, the Court finds that the law of New York governs this dispute, because that is where the relevant offer and acceptance occurred between the parties' agents.[1]

## I.      BACKGROUND

Plaintiffs Wausau Underwriters Insurance Company and the First Liberty Insurance Corporation (hereinafter, "Liberty") are insurance carriers owned by the same parent company, Liberty Mutual Group. DE 48-2 and DE 61 at ¶ 1. Defendant Danfoss is a manufacturer of valves and fluid handling components for industrial applications and employs hundreds of employees in multiple states. DE 61-18 at ¶ 1.

Liberty brings this action under the Court's diversity jurisdiction. *See* DE 5 at ¶ 5. Liberty alleges three breach of contract claims against Danfoss based on Danfoss' failure to pay premiums on three insurance policies: two workers' compensation and employer liability policies, and a commercial policy. *See* DE 5-1, 5-2, 5-3. Danfoss filed a counterclaim for breach of the duty of good faith and fair dealing. *See* DE 38 at 6-21.

The worker's compensation policies are "guaranteed cost" policies, meaning that their premiums are calculated based upon the insured's actual payroll at the end of the policy period, as affected by certain employee classifications and experience modification factors, rather than

---

[1] This Order does not decide whether New York law bars Defendant's claims and defenses due to its failure to exhaust administrative remedies. This Order also does not reach the issues raised in Plaintiffs' Motion to Dismiss that are unrelated to exhaustion of administrative remedies: (1) whether Defendant's counterclaim pleads a sufficient basis for damages; (2) whether Defendant's counterclaim is barred by the litigation privilege; and (3) whether Defendant's counterclaim violates Fed.R.Civ.P. 8. *See* DE 45. Those issues will be determined at a later date pursuant to New York law.

the losses or claims activity during the policy period. DE 48-1 at DE 61 at ¶ 2-3. The policies were issued with "estimated" annual premiums, but provided that the "final" premiums would be determined at the end of the one-year policy period. DE 5-1 at 83; DE 5-2 at 86.

The instant dispute arose when, after the end of the policy period, Liberty audited the policies, re-classified some of Danfoss' employees, and demanded premiums higher than the estimated premiums. Liberty asserts this was done because Danfoss refused to cooperate with the audit process and did not provide necessary documentation to determine the proper classifications. *See* DE 48-2 at ¶ 17; *see also* DE 48 at 2 ¶ 5. Danfoss asserts the re-classification was done in bad faith in "a frivolous attempt to generate additional revenue for Liberty," after "Danfoss notified Liberty that it would not be purchasing a new worker's compensation policy from Liberty." DE 62 at 8, 4; *see also* DE 38 at 6-23.

Liberty has moved for summary judgment on Counts 1 and 2 of the Amended Complaint, i.e., the claims based on the worker's compensation policies. *See* DE 48. Liberty argues Danfoss is barred from contesting whether Liberty properly calculated the premiums at issue, because Danfoss failed to exhaust available administrative remedies for doing so with the National Council on Compensation Insurance, Inc. ("NCCI") and the Florida Workers Compensation Appeals Board, as required by Florida law. *See* DE 48 at 9-10. Danfoss responds that Florida law does not apply to this dispute, and therefore the exhaustion requirement cited by Liberty does not apply. *See* DE 62 at 8-9. Danfoss argues that either Maryland or New York law applies, because that is where the insurance policies were executed, and neither of those jurisdictions requires exhaustion of administrative remedies in this context. *See* DE 62 at 9-14. At the October 23, 2015 hearing on the motions, the parties agreed that the subject policies do not contain any choice-of-law provisions.

## II.        SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*[2]

## III.        ANALYSIS

"Since this is a diversity action, we are required to apply the substantive law of the forum state, namely Florida, . . . including its conflict-of-laws rules." *Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) and *Klaxon Co. v. Stentor Elect. Mfg. Co.,* 313 U.S. 487 (1941)). However, "[b]efore beginning a choice of law analysis, a court should determine whether a conflict of laws truly

---

[2] The summary judgment standard, rather than the dismissal standard, is appropriate here, even though the parties have addressed the choice-of-law issue in the memoranda on both the motion to dismiss and motion for summary judgment. This is a factual dispute on which the parties have presented evidence outside the pleadings, and this Order does not address the adequacy-of-pleading issues raised in Liberty's motion to dismiss Danfoss' counterclaim.

exists." *Estate of Miller ex rel. Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009); *see also Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009) ("In any conflict of laws analysis, the first issue that needs to be addressed is whether a conflict actually exists. In other words, are we dealing here with a false conflict?"). "[A] true conflict exists when two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result." *Miller*, 609 F. Supp. 2d at 1244 (citing *Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. Dist. Ct. App. 2000)); *see also James River Ins. Co. v. Med Waste Mgmt., LLC*, 46 F. Supp. 3d 1350, 1355-56 (S.D. Fla. 2014) ("[W]here the laws of [ ] two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question.").

## A.      Whether there is a False Conflict of Laws

The three states that the parties contend have an interest in this litigation are Florida, Maryland, and New York. Accordingly, the Court will examine the law of each of these states with regard to whether they require a workers' compensation insured, such as Danfoss, to exhaust administrative remedies for challenging the calculation of premiums.

### 1)      Florida Law

Florida statutory law sets forth the method of determining and fixing rates for workers' compensation and employer's liability insurance. *See* FLA. STAT. § 627.072. Florida statutory law also requires every insurer to file, with the Florida Department of Financial Services, a manual setting forth the insurer's "classifications, rules, and rates, and every rating plan, and every modification of any of the foregoing which it proposes to use." FLA. STAT. § 627.091(1). However, the insurer may satisfy this obligation by "becoming a member of, or a subscriber to, a

licensed rating organization which makes such filings[.]" FLA. STAT. § 627.091. The NCCI "has

operated the only rating organization in the State of Florida for several decades," and "has filed

on behalf of its member carriers the Florida rates and rules contained in its Basic Manual for

Workers Compensation and Employers Liability Insurance (the 'the NCCI Manual')." *Cont'l*

*Cas. Co. v. First Fin. Employee Leasing, Inc.*, 716 F. Supp. 2d 1176, 1179 (M.D. Fla. 2010). The

filings of the NCCI are binding on its subscriber insurers. *Id.* (quoting FLA. STAT. §§ 627.191,

627.211). Liberty is an NCCI subscriber. *See* DE 48-2 and DE 61 at ¶ 3.

Florida requires rating organizations such as NCCI to establish a dispute resolution

process:

> As to workers' compensation and employer's liability insurances, every rating
> organization and every insurer which makes its own rates shall provide within this
> state **reasonable means whereby any person aggrieved by the application of
> its rating system may be heard**, in person or by his or her authorized
> representative, **on his or her written request to review the manner in which
> such rating system has been applied in connection with the insurance
> afforded him or her**. If the rating organization or insurer fails to grant or rejects
> such request within 30 days after it is made, the applicant may proceed in the
> same manner as if his or her application had been rejected. **Any party affected
> by the action of such rating organization or insurer on such request may,
> within 30 days after written notice of such action, appeal to the office, which
> may affirm or reverse such action**.

FLA. STAT. § 627.291(2) (emphasis added); *see also* FLA. STAT. § 627.371(1). NCCI provides for

such an appeals process, in which disputes are initially heard by the Florida Workers

Compensation Appeals Board and may be appealed to the Florida Office of Insurance

Regulation. *See* NCCI Manual (2001 ed.), Florida Section at pp. 1-6. According to the NCCI

Manual:

> The purpose of this Process is to review the application or interpretation of NCCI
> manual rules (including but not limited to class codes, experience rating, etc.).
> The Appeals Board does not have the authority to interpret, apply, or provide an
> opinion on state or federal laws, rules, or regulations; or decisions of courts or
> administrative proceedings; or to hear disputes brought by carriers.

NCCI Manual (2001 ed.), Florida Section at p. 1 ¶ B(1).

Courts applying Florida law have held that, when an insured under a workers' compensation and employer liability policy fails to exhaust the administrative remedy provided for in FLA. STAT. § 627.291(2), it cannot contest the calculation of premiums in a lawsuit by the insurer to recover those premiums. *See Fla. Welding & Erection Serv., Inc. v. Am. Mut. Ins. Co. of Boston*, 285 So. 2d 386, 389-90 (Fla. 1973) (upholding constitutionality of FLA. STAT. § 627.291(2) and affirming summary judgment for insurer, which had brought action to recover insurance premiums, on the basis of the insured's failure to exhaust administrative remedies); *see also Am. Home Assurance Co. v. Phineas Corp.*, 347 F. Supp. 2d 1231, 1236 (M.D. Fla. 2004) (granting summary judgment for insurer and finding the insured's "challenges to the final premium on the basis of 'improper classification' and other premium calculation defenses are themselves improper" under *Florida Welding*, because insured failed to exhaust administrative remedies); *FCCI Ins. Co. v. NCM of Collier Cty., Inc.*, 15 So. 3d 5, 6-7 (Fla. Dist. Ct. App. 2009) ("[A]n insurer's motion for summary judgment should be granted in an action to collect retrospective workers' compensation premiums when the insured defends against the motion based on a challenge to the good faith calculation of the premiums but has not exhausted its administrative remedies pursuant to section 627.371"). Accordingly, Florida law contains a strong exhaustion of remedies requirement for disputes over premium calculations.[3]

**2)      Maryland Law**

Similar to Florida law, Maryland law requires each workers' compensation insurer to "be a member of a workers' compensation rating organization" and to "adhere to the policy forms

---

[3] Danfoss presents several arguments as to why, even if Florida law applies, the exhaustion requirement does not apply here, including lack of notice. *See* DE 62 at 17-21. The Court does not find it necessary to reach these issues because the laws of Florida, Maryland and New York are sufficiently different so as to warrant a choice-of-law analysis and, as discussed further *infra*, Florida law does not apply under such an analysis.

filed by the rating organization." MD. CODE INS. § 11-329(a). NCCI operates as such a rating organization in Maryland. *See* NCCI Manual (2001 ed.) at p. P1. However, Liberty has cited no statutory provision, NCCI Manual provision, or case law that establishes an exhaustion of remedies requirement or a dispute resolution procedure similar to Florida's.

First, Liberty cites portions of the NCCI Manual User's Guide that provide a "generic overview of typical state dispute resolution procedures" and state that Maryland has an "Internal Review Panel" for reviewing such disputes. NCCI Manual (2001 ed.), User's Guide at p. UG6-UG9 ¶ E; *see* DE 69 at 5 (Liberty's summary judgment reply, citing this provision). Yet nothing in these provisions states that this Maryland dispute resolution process must be exhausted prior to filing suit in court.

Second, Liberty argues that Danfoss is barred from contesting the premium calculations because Danfoss has not filed a claim for violation of the Maryland Unfair Trade Practices Act with the Maryland Insurance Administration ("MIA"). *See* DE 56 at 8. In making this argument, Liberty relies on MD. CODE INS. § 27-216, which provides in relevant part: "A person may not willfully collect a premium or charge for insurance that . . . exceeds or is less than the premium or charge applicable to that insurance under the applicable classifications and rates as filed with and approved by the [Maryland Insurance] Commissioner[.]" MD. CODE. INS. § 27-216(b)(1)(i). Liberty cites no case law that specifically applies this provision to a worker's compensation insurance dispute.

Liberty does cite to *Carter v. Huntington Title & Escrow, LLC*, 24 A.3d 722 (Md. 2011), which held that the MIA was vested with exclusive, primary jurisdiction over claims of **title** insurance overcharging. *Id.* at 724. There, the insured brought a putative class action raising common law claims for money had/received and negligent misrepresentation, alleging that his

8

title insurer had charged him an inflated rate in connection with a refinancing of his mortgage. *Id.* at 725. The insurer moved to dismiss on the grounds that the insured had failed to exhaust administrative remedies. *Id.* at 726. The Court of Appeals of Maryland conducted a lengthy analysis as to whether the remedies were "exclusive," "primary but not exclusive" or "fully concurrent," considering four factors: (1) the comprehensiveness of the administrative remedy; (2) the agency's view of its own jurisdiction; (3) the claim's dependence upon the statutory scheme which also contains the administrative remedy; and (4) the claim's dependence upon the agency's expertise. *Id.* at 729 (citing *Zappone v. Liberty Life Ins. Co.*, 706 A.2d 1060, 1070 (1998)); *see also Renaissance Centro Columbia, LLC v. Broida*, 27 A.3d 143, 148-49 (Md. 2011) (noting that exclusive or primary administrative remedies must be exhausted before resort to the courts). While this case provides the general principles to be considered in considering an exhaustion of remedies argument under Maryland law, it does not definitively establish an exhaustion requirement such as under Florida law.

Thus, Liberty has cited no authority conclusively establishing that defenses and claims such as Danfoss' are barred unless raised before a Maryland administrative forum. This appears to be an issue of first impression under Maryland law. While the type of analysis utilized in *Carter* might lead to such a result, the Court finds it is unnecessary to undertake such an analysis at this juncture. The analysis of this issue under Maryland law is sufficiently different than the analysis under Florida law that the Court finds there is a genuine conflict of law requiring a choice-of-law analysis.

### 3)    New York Law

The New York regulatory scheme for workers' compensation insurance is significantly different from both Florida's and Maryland's, in that it does not involve the NCCI. *See* DE 48 at

7 n.7; NCCI Manual (2001 ed.), Preface at P1 (listing New York as a jurisdiction where the manual does not apply). In New York, workers' compensation insurance is administered by an independent government bureau called the State Insurance Fund. *See* N.Y. Workers' Comp. Law § 76 (McKinney).

In arguing that New York has an exhaustion requirement similar to Florida's, Liberty relies on three cases: *Liberty Mutual Insurance Company v. John Gailer, Inc.*, No. 96 CIV. 4978(LMM), 1997 WL 328074 (S.D.N.Y. 1997); *Investors Insurance Company of America v. Karbel Wholesale Autos, Inc.*, 569 N.Y.S. 323 (N.Y. App. Div. 1990); and *Di Pietro v. State Insurance Fund*, 619 N.Y.S.2d 456 (N.Y. App. Div. 1994). In *Gailer* and *Karbel*, the courts held that, in an action by the insurer to collect unpaid premiums, the insured could not raise incorrect re-classification of the insured employer's business as a defense, because this re-classification decision was made by the New York Worker's Compensation Insurance Rating Board, rather than the insurer. *See Gailer*, 1997 WL 328074 at *3; *Karbel*, 569 N.Y.S. at 323. In *Di Pietro*, the court found that because petitioner had elected to a pursue an administrative remedy, he was required to exhaust them before pursuing an action in court, but noted that "if sued by the State Insurance Fund for unpaid premiums, petitioner could challenge the Fund's calculation of the premium by raising that issue as a defense in that action[.]" 619 N.Y.S.2d at 214.

These cases highlight the difference between New York's worker's compensation scheme and that of Florida and Maryland. Furthermore, *Di Pietro* actually suggests that Danfoss' defense regarding improper calculation of premiums would not be barred by any exhaustion of remedies doctrine applied by New York courts. Accordingly, without deciding, at this time, whether New York law would impose such an exhaustion requirement in this case, the Court finds that the

differences between Florida, Maryland, and New York law on this issue present a true conflict of laws necessitating a choice-of-law analysis.

**B.      Under Florida Choice-of-Law Principles, What Law Governs the Present Dispute**

**1)      Whether the Florida Supreme Court would apply the doctrine of *lex loci contractus* to the instant dispute**

In a diversity action such as this one, this Court must apply the substantive law of the forum state, Florida, including its choice-of-law rules. *Fioretti*, 53 F.3d at 1235. "When resolving conflict-of-laws issues in contract actions, the Florida Supreme Court has unambiguously indicated its intent to reject the more modern (and flexible) 'significant contacts' analysis of the second Restatement of the law of conflicts, . . . choosing instead to adhere to the traditional rule of *lex loci contractus.*" *Id.* This rule "directs that, in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract was made, *i.e.*, where the last act necessary to complete the contract is done." *Id.* "[T]he basic assumption behind the *lex loci contractus* doctrine is that when a contract is executed in a particular state, the parties can be assumed to have intended to have that state's laws govern their contractual relationship." *Id.* at 1236 n.27.

Liberty argues that the *lex loci contractus* doctrine is inapplicable here because "[w]hile this action was filed in the form of a contract case (because Liberty had to bring claims in some legally cognizable manner), it is in fact a regulatory matter[.]" DE 48 at 4. Liberty cites no authority for the proposition that an action—explicitly filed as a common law breach of contract action—should be treated otherwise for purposes of determining the applicable choice-of-law rules. Moreover, Liberty provides no alternative choice-of-law rule for this Court to apply, merely concluding: "What is left to the Court to apply, then, is Florida substantive law since this

Court sits in diversity in Florida[.]" DE 48 at 4. This is a misinterpretation of cases such as *Fioretti*, which state that federal courts must apply the substantive law of the forum state: in this context, applying the substantive law of the forum state means applying the *choice-of-law* rules of the forum state, not merely concluding that the forum state's law applies with regard to the dispute.

"In interpreting Florida law, we look first for case precedent from the Florida Supreme Court. Where we find none, we are 'bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014) (quoting *Provau v. State Farm Mut. Aut. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985)). The parties have not provided, and this Court has not found, any precedent from the Florida Supreme Court or Florida appellate courts addressing the question at issue here: what choice-of-law rule applies in a breach of contract action to collect unpaid premiums for a multi-state worker's compensation insurance policy. Generally, "[s]ince 1990, the Florida courts have consistently applied the rule of *lex loci contractus* to resolve choice of law issues in insurance policies." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, No. 606CV-1180-ORL-31UAM, 2007 WL 3024345, at *4 n.7 (M.D. Fla. Oct. 15, 2007). Recently, in *State Farm Mutual Automobile Insurance Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006), the Florida Supreme Court emphasized it has "long adhered to the rule of *lex loci contractus*" and indicated its intention to continue doing so. *Id.* at 1163 (applying *lex loci contractus* doctrine to automobile insurance dispute). The court noted that, although *lex loci contractus* was an "inflexible rule," that inflexibility was "necessary to ensure stability in contract arrangements." *Id.* at 164 (quoting

*Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988)); *see also Lanoue v. Rizk*, 987 So. 2d 724 (Fla. Dist. Ct. App. 2008) (lender's suit on promissory note was governed by *lex loci contractus*).

The Court acknowledges that *Liberty Mutual Insurance Company v. Precisionaire, Inc.*, No. 8:00-CV-1971-T-17EAJ, 2006 WL 905389, at *4 (M.D. Fla. 2006), predicted that the Florida Supreme Court would not apply the *lex loci contractus* doctrine to the type of dispute at issue here. *Precisionaire* relied on *Shapiro v. Associated International Insurance Co.*, 899 F.2d 1116 (11th Cir. 1990), which predicted that the Florida Supreme Court would not apply the *lex loci contractus* doctrine to disputes that did not implicate the "migration rationale" expressed in its decisions related to automobile insurance. *See Shapiro*, 899 F. 2d at 1119 (finding that, in *Sturiano v. Brooks*, 523 So. 2d 1126, 1129-30 (Fla. 1988), "the court specifically limited its holding to contracts for automobile insurance, reasoning that we live in a migratory, transitory society and '[t]o allow one party to modify the contract simply by moving to another state would substantially restrict the power to enter into valid, binding, and stable contracts'"). Yet other decisions of the U.S. District Court for the Middle District of Florida have expressed "doubts that *Shapiro* and its progeny remain good law," since "Florida law has not followed the path predicted" therein. *Liberty Surplus*, 2007 WL 3024345 at *4 n.7; *see also CNL Hotels & Resorts, Inc. v. Houston Cas. Co.*, 505 F. Supp. 2d 1317, 1320 n.4 (M.D. Fla. 2007) ("The *Shapiro* court was making an educated guess that Florida was in the process of abandoning the 'antiquated' doctrine of *lex loci contractus* in favor of the approach advocated by the Restatement (Second of Contracts)," but "Florida's choice of law rules have yet to follow the path it predicted."). Subsequent to *Shapiro*, in *Roach*, the Florida Supreme Court strongly endorsed the *lex loci contractus* doctrine without expressly limiting its holding to automobile insurance contracts, emphasizing: "We have **never retreated** from our adherence to this rule in determining which

13

state's law applies in interpreting contracts." *Roach*, 945 So. 2d at 1164 (emphasis added). Accordingly, this Court concludes that the Florida Supreme Court would apply the doctrine of *lex loci contractus* in determining what law governs the instant controversy.

  **2)**  **Where the insurance policies were executed**

  "The determination of where a contract was executed is fact-intensive, and requires a determination of 'where the last act necessary to complete the contract [wa]s done.'" *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092-93 (11th Cir. 2004) (quoting *Pastor v. Union Cent. Life Ins. Co.*, 184 F. Supp. 2d 1301, 1305 (S.D. Fla. 2002)). In the present case, both Liberty and Danfoss assume that the last act necessary to complete the contract was the delivery of the policy. *See* DE 51 at 3-4 (Danfoss arguing, "Maryland law governs, as Maryland is the place where the Policies at issue were negotiated and executed" and "were issued to Danfoss at an address in Maryland."); DE 56 at 2 n.1 (Liberty arguing, "New York law governs, as the last act necessary to complete the insurance contracts was done by Danfoss' broker in New York, and the subject policies were issued to Danfoss' broker in New York."). However, the case law takes a different approach.

  Generally, "[t]he last act necessary to complete a contract is the offeree's communication of acceptance to the offeror." *Prime Ins. Syndicate*, 363 F.3d at 1093. In the context of insurance contracts, courts have concluded this act is "an insurer's (or its agent's) communication of acceptance of the insured's (or its agent's) offer to purchase insurance," by issuing a temporary "binder." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co., Inc.*, No. 12-CV-81397-KAM, 2015 WL 4648617, at *2 (S.D. Fla. Aug. 5, 2015); *see also Prime Ins. Syndicate*, 363 F. 3d at 1093 (finding that insurer's "communication of the oral binder to [the insured] constituted acceptance of [the insured's] offer to purchase insurance and, therefore, was the last act

necessary to complete the contract," notwithstanding the fact that the written policy had not yet

been delivered). In this context, "the binder [is] the last act necessary to complete a contract for

coverage." *Sun Capital*, 2015 WL 4648617 at *3 (citing *The Celotex Corp. v. AIU Ins. Co.*, 194

B.R. 668, 673 (Bankr. M.D. Fla. 1996)). For example, in *Sun Capital*, the court found:

> First, [the insured's] agent, Marsh Inc., emailed the insurer's agent an offer to
> purchase insurance by submitting a "formal order to bind coverage." Next, the
> insurer's agent accepted that offer and issued a binder for coverage from an office
> in New York. This acceptance was effective at the time—and at the place—where
> it was dispatched, i.e., New York. *Granite State Ins. Co.,* 2011 WL 6025655, at
> *5; *Kendel v. Pontious,* 261 So.2d 167, 169 (Fla.1972). The insurer's agent's
> acceptance of Plaintiff's agent's offer to purchase insurance was the last act
> necessary to complete the insurance contract. *See Prime Ins. Syndicate,* 363 F.3d
> at 1093. The fact that only binders were initially exchanged, and not the actual
> policies, does not alter the conclusion that Plaintiff's agent offered to purchase
> insurance coverage, specifying the terms of the policy, and the insurer's agent
> issued an acceptance based on those terms.

*Id.* at *4 (footnotes omitted); *see also Granite State Ins. Co. v. Am. Bldg. Materials, Inc.*, 2011

WL 6025655, at *4-5 (M.D. Fla. Dec. 5, 2011) (finding Massachusetts law governed where: (1)

the insureds, located in Florida, received a quote from the insurer, located in Massachusetts; (2)

the insured's agent emailed the insurer an offer to purchase insurance at the prices quoted, by

requesting that coverage be bound; (3) the insurer then accepted the offer and issued a binder for

the coverage from the insurer's Massachusetts' offices).

The present case is substantially similar to *Sun Capital* and *Granite State*. The policies

that are the subject of Liberty's motion for summary judgment were procured by and through

Danfoss' broker, Marsh USA, Inc. *See* DE 48-2 and DE 61 at ¶ 8. The mailing address listed for

Marsh in the insurance policies is in New York. *See* DE 5-1 at 85, 285; DE 5-2 at 88, 294.

Liberty has submitted an affidavit from its corporate representative stating that "Liberty dealt

with Marsh and issued (mailed) the . . . policies to Marsh in New York City, New York." DE 48-

1 at ¶ 7. Liberty has also submitted emails[4] between Marsh broker Brian Rath and Liberty underwriter Brian Conlon, which show that in December 2012, Liberty (via Mr. Conlon) emailed a binder to Marsh (via Mr. Rath). *See* DE 69 at 16-25. The signature lines of these emails indicate that both Mr. Conlon and Mr. Rath were located in New York. *Id.*

Danfoss has submitted nothing that contradicts this evidence. It has submitted an affidavit from an employee with personal knowledge of the insurance negotiations, which states:

> 3. During the entire time period while these two policies were in the process of being negotiated and placed, the Marsh USA offices were located [in] . . . Baltimore, Maryland[.] Eve Clark [Danfoss' head of human resources] received dozens of emails from Emily Rollins, a Risk Analyst at Marsh, and from Kristine Smith, a Senior Vice President and Client Manager, at Marsh, and the address on those communications was always . . . Baltimore, Maryland.

> 4. To my knowledge, no one who negotiated or signed the policy was in the state of Florida and none of the negotiations occurred in the state of Florida.

DE 61-2 at ¶¶ 3-4.

Based on this evidence, the Court finds that, under a *lex loci contractus* analysis, New York law governs this breach of contract action to collect insurance premiums. No evidence supports the conclusion that the contract was executed in Florida. The evidence submitted by Danfoss—that it dealt with Marsh agents located in Maryland—is not dispositive under the analysis utilized in *Sun Capital* and *Granite State.* The evidence submitted by Liberty shows that the relevant offer and acceptance occurred between the parties' agents in New York.

---

[4] These emails were submitted for the first time with Liberty's reply memorandum in support of summary judgment. *See* DE 69. The Court notes that Danfoss did not object to this evidence, either by filing a motion or orally at the hearing on October 23, 2015. Danfoss also did not request leave to file a sur-reply in response thereto. *See generally Baltzer v. Midland Credit Mgmt., Inc.*, No. 14-20140-CIV, 2014 WL 3845449, at *2 (S.D. Fla. Aug. 5, 2014) (affidavits and declarations attached to a reply brief may contain facts not previously mentioned in the underlying motion, as long as the facts rebut elements of the opposition memorandum and do not raise wholly new factual issues).

Accordingly, it is **ORDERED AND ADJUDGED** that the Court determines that New York law governs this dispute, as raised in Plaintiffs' Motion to Dismiss Defendant's Counterclaim [DE 45] and Plaintiffs' Motion for Summary Judgment [DE 48].[5]

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 26th day of October, 2015.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

---

[5] Again, this Order does not decide whether New York applies an exhaustion of administrative remedies doctrine to the instant case, such that Danfoss' claims or defenses are barred. This Order also does not reach the other issues raised in Liberty's motion to dismiss Danfoss' counterclaim, such as whether Danfoss has properly pled a claim for damages.