**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 2:14-CV-14420-ROSENBERG/LYNCH**

WAUSAU UNDERWRITERS INSURANCE
COMPANY and THE FIRST LIBERTY
INSURANCE CORPORATION,

      Plaintiffs,

v.

DANFOSS, LLC,

      Defendant.

_____/

**OMNIBUS ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,**
**PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM,**
**AND PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE TESTIMONY AND**
**EVIDENCE RELATED TO CLASSIFICATION CODES**

**THIS CAUSE** comes before the Court on Plaintiffs' Motion for Summary Judgment [DE 48], Plaintiffs' Motion to Dismiss Defendant's Counterclaim with Prejudice [DE 45], and Plaintiffs' Motion in Limine to Exclude Testimony and Evidence Related to Classification Codes [DE 89]. The Court has reviewed the relevant pleadings, including the parties' notices of supplemental authority, and is otherwise fully advised in the premises.

The Court finds that Plaintiffs are not entitled to summary judgment on their breach of contract claims, dismissal of Defendant's counterclaim, or exclusion of evidence related to classification codes, on the grounds that Defendant failed to exhaust administrative remedies. Although Plaintiffs now argue that Defendant was required to challenge Plaintiffs' alleged misclassification of Defendant's employees in the administrative fora of each state in which those employees are located, Plaintiffs have failed to show: (1) which states those employees are located in; (2) what administrative remedies are available in each of those states; and (3) whether

1

the applicable statutes or case law in each of those states provides that a failure to exhaust such remedies bars Defendant from defending or bringing a counterclaim on the basis of improper classification. The procedural history of this case, which is reviewed below[1], demonstrates why Plaintiffs have failed to meet their burden. Early in the case, Plaintiffs took the position that Defendant could have utilized one administrative remedy to address the alleged misclassification of all of its employees; only recently have Plaintiffs asserted that Defendant should have pursued administrative remedies in multiple states, depending on where the allegedly misclassified employees are located. Consequently, Plaintiffs have failed to develop the evidence and legal authority necessary to prove they are entitled to relief on this ground.

Regarding the other arguments in Plaintiffs' Motion to Dismiss, the Court grants the motion in part and dismisses Defendant's counterclaim without prejudice. The Court finds that Defendant's counterclaim must be re-pled because it is not clear, under New York common law, what counterclaim or counterclaims Defendant is attempting to raise, and whether Defendant has properly stated a claim for damages. However, the motion is denied to the extent Plaintiffs contend that the counterclaim is barred by the litigation privilege or that it violates Federal Rule of Civil Procedure 8 by failing to separate the claims by Plaintiff.

## I.   PROCEDURAL HISTORY

### A.   Complaint and Counterclaim

Plaintiffs' ("Liberty") Amended Complaint brings three breach of contract claims against Defendant ("Danfoss"). *See* DE 5. These claims are based on Danfoss' failure to pay premiums allegedly due on two worker's compensation insurance policies and one commercial insurance policy. *Id.* at ¶¶ 7-8. Copies of the policies are attached to the Amended Complaint. *See* DE 5-1,

---

[1] The Court reviews the procedural history chronologically, rather than by motions filed, because this more clearly represents how the legal issues were developed in this case.

5-2, 5-3. The policies provide worker's compensation coverage for Danfoss' employees located in more than 30 states. *See* DE 5-1 at 92-114; DE 5-2 at 96-126.

Danfoss' Amended Answer raises four affirmative defenses. *See* DE 38. The only defense relevant to the pending motions is the first: that Liberty "breached the terms of the insurance contracts sold to Danfoss and cannot rely on and seek to enforce against Danfoss provisions and conditions of the contracts that they have repudiated[.]" *Id.* at 5 ¶ 1.[2] Danfoss' Amended Answer also includes a counterclaim for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* at 5-23. In this counterclaim, Danfoss alleges that Liberty demanded "inaccurate and hugely inflated estimated premiums," and thereby violated a provision in the insurance policies requiring Liberty to calculate the premium correctly by "assign[ing] proper classifications, rates and premium basis" to Danfoss' employees. *Id.* at 7-8, 10-11 ¶¶ 9, 24, 26; *see also* DE 5-1 at 82; DE 5-2 at 85. Specifically, Danfoss alleges that, during audits of the policies, Liberty's auditor Donald Frashier

> arbitrarily and without any support whatsoever, moved employees from low-risk work classifications such as 'clerical office employees' (NCCI Scopes Manual category 8810) into much higher-risk classifications such as 'television, radio, telephone or telecommunications device manufacturing,' (NCCI Scopes Manual category 3681), which resulted in artificially inflated estimated final premiums[.]

*Id.* at 19 ¶ 71. Danfoss' counterclaim does not specifically identify the employees that Danfoss contends the auditor improperly reclassified, or in what state(s) those employees are located.

## B.    Liberty's Motion to Dismiss Danfoss' Counterclaim

On August 19, 2015, Liberty filed the currently pending Motion to Dismiss Defendant's Counterclaim with Prejudice on three grounds. *See* DE 45. First, Liberty argued that Danfoss did

---

[2] The other defenses are: (1) "Danfoss complied with all conditions precedent to coverage and paid all premiums"; (2) Liberty's "claims are barred by the doctrines of waiver and estoppel"; and (3) Liberty has failed to state a claim upon which relief can be granted. DE 38 at 5 ¶¶ 1-4.

not suffer any damages because it did not pay the premium to which it objects. Second, Liberty argued:

> An insured like Danfoss that disputes its workers' compensation carrier's computation of premiums, or application of occupational classifications, is barred from contesting or mitigating, via defense or affirmative claim, the carrier's determination of premium in later litigation if it did not first avail itself ***of the dispute resolution and appeals process administered by the National Council on Compensation Insurance ("NCCI")***. See Florida Welding & Erection Service, Inc. v. American Mut. Ins. Co. of Boston, 285 So. 2d 386 (Fla. 1973); §627.291(2) Fla. Stat. (2015); §627.371 Fla. Stat. (2015). Danfoss has not alleged it exhausted its administrative remedies before filing this Counterclaim.

*Id.* at 3 ¶ 2 (emphasis added). Third, Liberty argued the counterclaim was barred by the litigation privilege, because it was based on the filing of the present lawsuit. In support of these arguments, Liberty cited Florida law. Finally, Liberty argued that the counterclaim should be dismissed without prejudice under Federal Rule of Civil Procedure 8 because the counterclaim places claims against two plaintiffs, based on two contracts, into one count.

**C.      Liberty's Motion for Summary Judgment as to Liberty's Breach of Contract Claims**

On September 2, 2015, Liberty filed the present motion for summary judgment on two of its three breach of contract claims: those based on the worker's compensation policies. *See* DE 48. In support of the motion, Liberty submitted an affidavit from Carrier Ayer, a Senior Receivables Analyst. *See* DE 48-1. In its motion for summary judgment, Liberty noted that "Danfoss is a multi-state risk generating exposure across the country" and that "[a]ll carriers writing workers' compensation in the voluntary market (like the Liberty workers' compensation policies in issue in this lawsuit) must abide by the regulatory filings of the NCCI, the National Council on Compensation Insurance, ***where NCCI is the state-authorized ratemaking entity***." *Id.* at 2 ¶ 3 (emphasis added). Liberty asserted that NCCI is the state-authorized ratemaking entity in all states except Washington, California, North Dakota, Wyoming, Minnesota,

Wisconsin, Michigan, Indiana, Pennsylvania, New York, and North Carolina. *Id.* at 7 n.7. Liberty asserted that, for NCCI states, "[t]he standard workers' compensation premium is computed pursuant to NCCI's *Basic Manual* (2001 ed.)." *Id.* at 2 ¶ 4.

With regard to the dispute in the present case, Liberty argued that it "tried to audit the policies [in order to calculate the premiums] but ultimately could not secure Danfoss' full compliance with audit documentation requests. *See* the Affidavit of Carrier Ayer. Accordingly, Liberty- as is permitted- estimated the audit[.]" *Id.* at 2 ¶ 5. For its authority to "estimate" the audit, Liberty relies on the following:

> If an insured fails to provide its carrier, upon the latter's demand, necessary information and documentation pursuant to which to conduct the final premium audit then the carrier may estimate that final audit and in the process assign the insured's payrolls to the highest rated occupational classification, called the governing classification, on the policy. *See* NCCI *Basic Manual- National* (2001 ed.), Rule 1.5 (Governing Classification) for the definition of governing classification. For the rule on allocating payroll to the highest rated (most expensive) classification, see NCCI *Basic Manual – National* (2001 ed.), Rule 2.G.2 (Interchange of Labor"), in relevant part "If payroll records do not show the actual payroll applicable to each classification, the entire payroll of the individual employee must be assigned to the highest rated classification that represents any part of his or her work." If there is no single basic classification code that represents the largest amount of payroll, the payroll in the standard exception code (Classes 8810, 8742, 8748 and 8871) is to be assigned to the highest rated classification code that represents any part of the employee's work. *Id.*

DE 48-1 at 9-10 ¶ 16.

Liberty's sole argument in favor of summary judgment on its breach of contract claims is that, if Danfoss disagreed with the manner in which Liberty "estimated" the premiums, Danfoss should have challenged the "estimation" in an administrative forum. In its motion for summary judgment, Liberty argued that Danfoss should have utilized the dispute resolution process described in the "NCCI *Basic Manual User's Guide* (2001 ed.), section E (Dispute Resolution Process), and Section 627.291(2), Florida Statutes." DE 48 at 9 ¶ 18. Liberty argued:

> Danfoss failed to initiate and exhaust its required administrative remedies and waived the availability of the administrative process through its engagement in this litigation and complete inaction as relates to pursuit of the required administrative review. Because of its inaction and failure to comply with the required process, Danfoss is barred from raising any defense related to the application of NCCI regulatory rule, rates, and rating plans used in its carriers' calculation of estimated premiums owed.
>
> * * *
>
> Where an insured has a dispute with its carrier concerning the computation and application of experience modification factors, occupational classifications, the meaning, interpretation, and application of regulatory rules contained in NCCI *Manuals*, or the carrier's computation of standard, deductible, retrospective or estimated premium pursuant to estimated final audits or otherwise, the insured *must* avail itself of the dispute resolution and appeals process administered by NCCI.

*Id.* at 9-10 ¶¶ 18, 20.

Liberty's motion for summary judgment raised a choice-of-law issue for the first time. Liberty argued, "Florida law applies to this dispute. This Court is sitting in diversity so it must apply the substantive law of Florida, the forum state." DE 48 at 3 ¶ 7. Liberty argued that the Florida choice-of-law doctrine of *lex loci contractus* – in which Florida courts would apply the law of the state in which the contract was made to questions involving the interpretation of a contract – was inapplicable here because "[t]his dispute is not about coverage" and "[n]o party is seeking an interpretation of a policy provision[.]" *Id.* at 3-4 ¶ 7. Liberty acknowledged that Danfoss' counterclaim would involve an analysis "of the audit process, guarantee cost programs, and applicable regulatory rules," but asserted that "the counterclaim does not in any event obligate or even permit this Court to apply anything other than Florida substantive law to the resolution of this motion [for summary judgment]." *Id.* at 4 ¶ 7.

**D.      Danfoss' Response to the Motion to Dismiss**

On September 8, 2015, Danfoss responded to Liberty's Motion to Dismiss. *See* DE 51. Danfoss denied that Florida law governed this dispute, arguing, "This action is a coverage

6

dispute over the meaning and application of insurance policies issued by [Liberty] to Danfoss—specifically, it involves the interpretation of a provision within the 011 and 012 Policies that Danfoss has alleged [Liberty] breached in bad faith," i.e., the provision requiring Liberty to "assign proper classifications, rates and premium basis" to the policy. *Id.* at 2-3. Danfoss argued that, since this was a dispute requiring the interpretation of the parties' contract, Florida courts would apply the doctrine of *lex loci contractus*, which mandates that the governing law is the place of the contract's execution. *Id.* at 3-4. Danfoss argued the contract was executed in Maryland, where its insurance broker, Marsh, was located. *Id.* at 4.

Regarding Liberty's exhaustion of remedies argument, Danfoss argued it was "not bound by the administrative remedies under Florida law asserted by" Liberty because "these statutory provisions and the administrative remedies proscribed therein, are specific to Florida; whereas, this dispute is governed by Maryland law. . . . Danfoss is aware of no equivalent or similar mandatory statutory requirement in Maryland." *Id.* at 12. Like Liberty, Danfoss noted:

> NCCI is a quasi-official advisory body, or rating bureau, that has been delegated responsibility by certain state workers' compensation authorities to set guidelines and standards for the determination of worker classifications, and subsequently, rates for workers' compensation policies. Of note, 34 states follow the NCCI guidelines and have adopted its manuals, while 16 states have their own guidelines and manuals. ***Danfoss had operations in both NCCI and non-NCCI states at the time the two policies were issued.*** Maryland, for example, is an NCCI state.

*Id.* at 12 (emphasis added).[3]

Regarding Liberty's other arguments for dismissal, Danfoss argued, first, that its counterclaim adequately pled damages in the form of: (1) "attorneys' fees to defend this action"; (2) "damages as a result of having to expend substantial corporate resources, first, in response to

---

[3] Danfoss asserted that it had "filed a complaint with the Maryland Insurance Administration ('MIA') on August 21, 2015 in connection with Plaintiffs' conduct," but argued this was "a separate and non-mandatory administrative remedy that . . . need not be exhausted prior to the filing of Danfoss' Counterclaim." *Id.* at 12 n.5.

[Liberty's] excessive and unreasonable audit process and later, in response to the defense of this action—for example, employees' time spent responding to [Liberty's] requests for information, collecting documents, or preparing for depositions in response to discovery"; and (3) punitive damages. *Id.* at 7-8, 11. Second, Danfoss argue its counterclaim was not barred by the litigation privilege because it relied on pre-suit conduct to establish Liberty's bad faith, in addition to the filing of the present action. *Id.* at 13-15. Finally, Danfoss argued that pleading the two claims against the two Plaintiffs in one count was not improper under Rule 8 because of "the close corporation relationship shared by Wausau and First Liberty here, as well as the fact that the two companies acted jointly as one with respect to the premiums and audits at issue in this action." *Id.* at 15-16.

E.      **Liberty's Reply to the Motion to Dismiss**

On September 18, 2015, Liberty filed its reply in support of its Motion to Dismiss. *See* DE 56. In this reply, Liberty added a new wrinkle to the choice-of-law issue by raising a factual dispute as to where the contract was executed. Liberty argued that, if the Court decided to apply the *lex loci contractus* doctrine, the law of New York, rather than Maryland, would govern the dispute because the contract was in fact executed in New York rather than Maryland. *Id.* at 2 n.1.

F.      **Danfoss' Response to Liberty's Summary Judgment Motion**

On September 28, 2015, Danfoss filed its response in opposition to summary judgment. *See* DE 62. Regarding the choice-of-law issue, Danfoss acknowledged the factual dispute regarding where the contract was executed, but argued that the Court did not need to resolve this dispute because neither Maryland nor New York required Danfoss to exhaust administrative remedies in this context. *Id.* at 1. Alternatively, Danfoss argued that, even if Florida law applied, Danfoss was not required to bring its counterclaim before the Florida Workers Compensation

Appeals Board because "that entity **does not even have jurisdiction** over 98% of Danfoss' employees, **who do not work in Florida**." *Id.* at 2 (emphasis added).[4] Despite its assertion that a state administrative body would have jurisdiction *only* over the employees located in that state, Danfoss denied that it was required to litigate this issue before administrative bodies in more than one state:

> Danfoss agrees with Liberty's premise that the law of a single state governs this dispute across the board. Thus, Danfoss agrees that the applicable law should not vary depending on the employee's state of employment. Although every state has its own worker's compensation laws, **the disputed issues in this case do not turn on any particular state's worker's compensation law**. Instead, they turn on the insurance policy, which is governed by the law of only one state: either Maryland or New York.
>
> Indeed, it would be absurd for the applicable law to vary depending on the employee's state of employment. If the applicable law varied depending on the employee's state of employment, disputes over premiums for Danfoss' Illinois employees would be governed by Illinois's exhaustion requirements, disputes over premiums for Danfoss' Wisconsin employees would be governed by Wisconsin's exhaustion requirements, and so forth for every state in which Danfoss has employees. **The states vary on whether, and to what extent, administrative exhaustion is required in premium disputes.** Thus, if the applicable law varied depending on the employee's state of employment, Danfoss and Liberty might have to litigate the identical issues—for instance, whether Danfoss cooperated with Liberty's audits—in numerous state agencies and judicial systems simultaneously. That would be an absurdly inefficient way to resolve this dispute. Thus, the Court should hold, as the parties agree, that one state's law applies to this entire dispute.

*Id.* at 9-10 (emphasis added). Despite arguing that this case did not turn on the worker's compensation law of any particular state, Danfoss also argued that exhaustion in New York was "not even possible in this case" because "New York has no affiliation with the NCCI" and the dispute "**pertains to the application of the NCCI Manual**." *Id.* at 12 (emphasis added).

---

[4] Danfoss also raised various arguments as to why, due to the nature of the counterclaim, it did not need to be raised before the Florida Workers Compensation Appeals Board. *See* DE 62 at 2.

G.      **Liberty's Reply in Support of Summary Judgment**

On October 8, 2015, Liberty filed its reply in support of summary judgment. *See* DE 69. Liberty again argued, "Since Florida law applies to this dispute, Liberty must prevail because Florida requires workers' compensation insureds to administratively redress premium disputes with their carriers." *Id.* at 1. Liberty argued that "[t]here is no contract provision to interpret" and "Liberty's claims instead involve the interpretation and application of *state-approved regulatory rules* to workers' compensation policies issued to Liberty's former insured and the laws that recognize and apply them." *Id.* at 4 and n.4 (emphasis added). Liberty argued that applying *lex loci contractus* "on these facts is a bad idea . . . because these disputes are not subject to analysis [by a court] at all *in those jurisdictions where NCCI is the state-authorized regulatory authority*," because in those jurisdictions, Danfoss was required to exhaust the administrative remedies provided by NCCI. *Id.* at 4-5 (emphasis added). Liberty then ambiguously asserted: "Liberty agrees [with Danfoss] that the substantive laws of a single state apply. . . . Liberty does not agree, however, that only the laws of a single state apply since regulatory rules are also in issue." *Id.* at 5. Liberty ultimately concluded:

> The only thing before the court is Liberty's motion for summary judgment on two claims that had to be brought for breach of contract because insurance policies are contracts and nonpayment of premiums breaches the policy. Danfoss' counterclaim is not before the court in the context of this motion. There is no dispute that Danfoss failed to initiate and exhaust administrative remedies, or that Liberty's claims and Danfoss' affirmative defenses do not involve a coverage issue or obligation under a contract. The claims and defenses do not ask the court to interpret or apply any policy provision.

*Id.* at 10 ¶ 17.

H.      **The Court's Partial Order on Choice-of-Law Issue**

On October 23, 2015, the Court held a hearing on Liberty's Motion to Dismiss and motion for summary judgment. *See* DE 79. On October 26, 2015, the Court issued a Partial

Order on Plaintiffs' Motion for Summary Judgment and Motion to Dismiss Defendant's Counterclaim. *See* DE 84. Initially, the Court found that a choice-of-law analysis was necessary because the laws of Florida, Maryland, and New York were significantly different with regard to worker's compensation insurance and doctrines of exhaustion of administrative remedies relating thereto. The Court held that Florida courts would apply the doctrine of *lex loci contractus* in this context, and that New York was the place where the contract was executed pursuant to this doctrine.

**I.    Supplemental Authority and Briefing on Motion in Limine to Exclude Evidence of Classification Codes**

At the parties' request, the Court allowed the parties to file supplemental authority on the issues in the case in light of the Court's choice-of-law ruling. *See* DE 86, 93, 103-05, 109, 111. Regarding the exhaustion of administrative remedies issue, Liberty cited portions of the New York Insurance Law, sections from the manual of the New York Compensation Insurance Rating Board ("NYCIRB"), and New York case law holding that disputes over proper classification of employees should be brought in an administrative forum. *See* DE 105 (citing, for example, *Liberty Mutual Ins. Co. v. Harvey Gerstman Assocs., Inc.*, No. CV 11-4825(SJF)(ETB), 2012 WL 5289606 (Sept. 13, E.D.N.Y. 2012), *report & recommendation adopted at* 2012 WL 5289587 (E.D.N.Y. Oct. 24, 2012)).

At the same time, Liberty also moved in limine to exclude testimony and evidence related to classification codes. *See* DE 89. Liberty argued, "New York courts have expressly ruled that such arguments are relegated to the NYCIRB Appeals Process." *Id.* at 7 ¶ 15. Danfoss responded:

> First, **the NYCIRB does not even have jurisdiction over this dispute**, because Liberty has admitted it did not follow the NYCIRB's manual or apply it to Danfoss' post-policy audits. Second, exhaustion is required only when a

policyholder collaterally challenges a decision by the NYCIRB itself; here, Danfoss makes no such argument. Third, when an insurer sues its policyholder, New York law bars the insurer from invoking exhaustion to prevent the policyholder from presenting evidence regarding the insurer's own actions. Finally, *even if exhaustion was required, it would be required only as to Danfoss' four New York employees, not as to Danfoss' out-of-state employees that are the subject of the vast majority of this dispute*.

DE 110 at 2 (emphasis added). On the same day that Danfoss filed this response to the motion in limine, it filed a notice of supplemental authority asking the Court to consider this response as supplemental authority on the issue of exhaustion of remedies. *See* DE 111.

On November 27, 2015, Liberty filed its reply in support of its motion in limine. *See* DE 123. Although Liberty had previously invoked only New York's administrative remedies in its motion in limine and its supplemental authority on the exhaustion of remedies issue, Liberty now argued:

Danfoss fails to recognize the basic concept that a classification code dispute is the standard administrative fare brought before and resolved by regulators under Florida, New York or almost any other state's workers' compensation authorities. Even states that do not contract with NCCI as the state- authorized ratemaking entity require exhaustion of administrative remedies. *See, e.g., California Insurance Code §11737*; *Jonathan Neil & Associates, Inc. v. Jones, 33 Cal. 4th 917, 94 P.3d 1055 (2004), as modified (Oct. 20, 2004)*. Thus, it is immaterial in a general sense which state is being addressed. . . .

Danfoss reverses the obligation of insurer and insured in arguing that Liberty is required to go before administrative agencies in each state to recover the owed premium. Rather, the burden to contest class code assignments *through the various state dispute resolution processes* is on the insured. There is no national system of workers compensation insurance so *the insured must seek relief in those states generating exposures to which it believes incorrect class codes were assigned*.[3]

[n.3] In Danfoss' case, *it is impossible for Liberty to say which states Danfoss should make a complaint to*, as Danfoss has refused to identify any specific class code to which it has objection. *See* Deposition of Eve Clark, Danfoss Corporate representative [DE 55-2].

*Id.* at 2-4 ¶¶ 3-4 (emphasis added).

## II.    LEGAL STANDARD[5]

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).  Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The party moving for summary judgment bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In considering a motion to dismiss, the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321 (11th Cir. 2012). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to

---

[5] "In diversity cases, federal courts must apply federal procedural rules, but substantive state law." *Fin. Fed. Credit Inc. v. Boss Transp., Inc.*, 456 F. Supp. 2d 1367, 1372 n.1 (M.D. Ga. 2006) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Court therefore applies the federal procedural standards for motions to dismiss and motions for summary judgment, as established in Federal Rules of Civil Procedure 12 and 56, as well as federal case law interpreting those rules. However, the Court applies state law to the substantive issues raised in the motion to dismiss and motion for summary judgment, as discussed *infra* in more detail.

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss may assert lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and "a matter in abatement, even if non-jurisdictional, such as exhaustion of administrative remedies, is appropriately raised in a Rule 12(b) motion to dismiss[.]" *Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424 (11th Cir. 2010).

### III.    ANALYSIS

#### A.    Liberty's Motion for Summary Judgment

Liberty argues that, because Danfoss has failed to challenge Liberty's classification of Danfoss' employees in an administrative forum, Liberty should be granted summary judgment on its breach of contract claims based on the worker's compensation policies. The Court denies Liberty relief because Liberty has failed to carry its burden of proof or persuasion on this issue.

As should be apparent from the procedural history related *supra*, the parties have failed to address, until recently, the choice-of-law issue lurking beneath their assertions that the law of one state governs this dispute. The parties continuously acknowledged that each state has different regulations and requirements for worker's compensation insurance. Yet, prior to the motion in limine stage, Liberty never took the position that Danfoss was required to bring the dispute regarding classification of its workers in multiple states' administrative fora. Both parties assumed, as did the Court, that Liberty was arguing that Danfoss was required to challenge the classification of all of its workers, regardless of where they were located, in either New York, Florida, or Maryland. Then, in its November 27, 2015 reply in support of its motion in limine, Liberty argued that Danfoss was in fact required to challenge the classification of its workers in multiple states, depending on where those workers were located. The Court agrees with Liberty's

most recent position on this issue but finds that, as a consequence, Liberty has failed to prove its entitled to summary judgment.

The Court stands by its prior order on the choice-of-law issue raised by the parties, at least insofar as this case requires application of common law contracts principles to interpret the insurance policies at issue. *See* DE 84. With regard to interpretation of the policies, the Court found that Florida courts would apply the doctrine of *lex loci contractus* and therefore would apply New York law, because that is where the contract was executed. However, insofar as this case requires an analysis of whether Liberty properly calculated the premium it seeks by properly classifying Danfoss' employees—an issue raised by Danfoss as both a defense and a counterclaim—this issue must be governed by the law of the state where the relevant employees are located. Insofar as the Court's prior choice-of-law Order can be interpreted as finding that New York law governs the issue of misclassification, including the issue of whether misclassification must be raised in an administrative forum, it is vacated.

As Liberty presently asserts, "There is no national system of workers compensation insurance," and each state has its own rules and regulations that govern the classification of workers (and, therefore, the calculation of premiums) within its state. DE 123 at 2-4 ¶¶ 3-4. This principle is illustrated by the case of *Wal-Mart Stores, Inc. v. Crist*, 855 F.2d 1326 (8th Cir. 1988). There, an insurer offered to provide workers' compensation insurance coverage for all Wal-Mart employees, located in eighteen different states, for a flat premium of $3.5 million. *Id.* at 1328-29. Although the policy provided that the premium would be computed using NCCI rules, the insurer manipulated Wal-Mart's payroll data in order to reach the flat premium it had promised Wal-Mart, and Wal-Mart was aware of this. *Id.* at 1329. When the insurer later tried to claim a larger premium from Wal-Mart, Wal-Mart filed suit. *Id.* at 1329-30. In addressing an

issue of whether the insurance broker who had negotiated the policy with Wal-Mart had the authority to do so, the Eighth Circuit applied Arkansas law, which the parties had agreed governed that issue. *Id.* at 1331. In contrast, in addressing whether the agreement was legal, the Eighth Circuit "review[ed] the record and the workers' compensation laws of the states involved" and concluded:

> [W]hile it is true, as Wal–Mart contends, that there has been a marked trend away from strict regulation of the rates which workers' compensation insurers must charge, all states, including those in which insurers are free to charge whatever rates they desire (the so-called "open-rated" states), require that insurers file their rating schedules and policy forms for review by state authorities, who may reject rate proposals which would result in inadequate, excessive or discriminatory charges.[8] In addition, each state prohibits any person or organization from knowingly submitting false or misleading information to the regulatory authorities responsible for such review.[9] Regardless of the degree of control and supervision each state exercises over the specific rates workers' compensation insurers may charge, all require that these informational filings be made. We believe that the arrangement in effect in this case stands in clear violation of this statutory requirement.

*Id.* at 1333 (at footnotes 8 and 9, citing the relevant statutes from each of the eighteen states where Wal-Mart had employees).

The Court's citation to *Crist* is not meant to suggest that the worker's compensation insurance policies at issue in this case are illegal. Rather, *Crist* simply illustrates that the proper setting of premiums for such policies is governed by the law of the state where the employees are located. This principle is also illustrated by the New York and Florida worker's compensation insurance statutes, which indicate they apply only to risks (i.e., employees) within that state. *See* N.Y. Ins. Law § 2302 (McKinney) ("This article shall apply to all kinds of insurance written on risks or operations ***in this state*** by an insurer authorized to do business in this state[.]") (emphasis added); Fla. Stat. § 627.021(1) ("This part of this chapter applies only to property, casualty, and surety insurances on subjects of insurance, resident, located, or to be performed ***in this state*.") (emphasis added). This principle is also illustrated by the Florida section of the

NCCI Manual, which Liberty has provided to the Court, which states: "When the resolution of the issue(s) in dispute affects the business operations of the policyholder in Florida and at least one other state, the [Florida] Appeals Board's decision will apply *only to business operations located in Florida*." DE 62 at 17-18 (emphasis added).

Just as each state has different rules for classifying employees and calculating premiums, each state also has different administrative remedies for challenging those classifications, as established by statute and/or by the rate-making authority in that state. It is true that the NCCI is the rate-making entity in many states, and presumably offers the same or similar administrative processes for resolving classification disputes. Yet Danfoss has employees in both NCCI and non-NCCI states. *Compare* DE 5-1 at 92-114 and DE 5-2 at 96-126 (policy provisions listing covered employees) *with* DE 48 at 7 n.7 (Liberty's motion for summary judgment, listing NCCI states); *see also* DE 51 at 12 (Danfoss' response to the motion to dismiss, stating it has employees in both NCCI and non-NCCI jurisdictions). Moreover, even as to NCCI states, Liberty has not conclusively established that failure to utilize the NCCI dispute resolution process would bar Danfoss from raising misclassification as a defense to Liberty's breach of contract action. There is nothing in the NCCI Manual that makes this dispute resolution process mandatory; it is only pursuant to state statutes or case law that Danfoss' defense or counterclaim would be barred. *See, e.g., Travelers Indemn. Co. v. D.J. Franzen, Inc.*, 792 N.W. 2d 242, 247-51 (Iowa 2010) (finding that "even if the dispute resolution section of the [NCCI] Manual had been incorporated into the contract, there is no language in that section making exhaustion of NCCI's offered administrative procedure mandatory"; but interpreting Iowa statute requiring rating organization to establish such procedures as mandating their use, such that the employer's defenses and counterclaims were barred).

Liberty has failed to meet its burden of showing that it should be granted summary judgment based on Danfoss' failure to exhaust the administrative remedies of each state where Danfoss has employees that Danfoss alleges Liberty misclassified. As Liberty admits, it is not clear, on the current record, who the allegedly misclassified employees are, much less where they are located. *See* DE 123 at 3 n.3. Liberty has therefore failed to establish: (1) what administrative procedures exist in each of the relevant states for bringing classifications disputes; and (2) whether the law of each of those states provides that such remedies are mandatory, in that that Danfoss' failure to utilize them would bar Danfoss from defending this action on the basis of improper classification.[6]

Accordingly, the Court finds that Liberty has failed to prove that is entitled to summary judgment on the basis of exhaustion of remedies. Liberty's Motion for Summary Judgment [DE 48] is therefore **DENIED**.

**B.      Liberty's Motion in Limine to Exclude Testimony and Evidence Related to Classification Codes**

Liberty argues that "testimony and evidence relating to the class codes [Liberty] assigned [to Danfoss' employees] at the final premium audits of the 011 and 012 policies" is inadmissible as unduly prejudicial under Federal Rule of Evidence 403 and irrelevant under Rules 401 and 402. *See* DE 89 at 2-3, 8. Liberty argues that this issue is "relegated to the [New York] Appeals Process" and that this Court "lacks jurisdiction to hear such issues under New York law." *Id.* at 7 ¶¶ 1-16. Because Liberty has failed to demonstrate that Danfoss failed to exhaust its

---

[6] The Court also notes that Liberty has not established that the time in which Danfoss could pursue such remedies has passed and exhaustion is therefore impossible. In the absence of such evidence, it is not clear that granting summary judgment for Liberty would be the appropriate remedy, rather than dismissing the action without prejudice or issuing a stay to allow Danfoss to utilize the administrative process. In its motion for summary judgment, Liberty asserts that Danfoss has "waived the availability of the administrative process through its engagement in this litigation and complete inaction as relates to pursuit of the required administrative review," DE 48 at 9-10 ¶¶ 18, 20, but cites no legal authority in support of this argument.

administrative remedies, as discussed *supra*, the Court finds declines to exclude this evidence on this basis. Accordingly, the motion in limine [DE 89] is **DENIED**.

**C.      Liberty's Motion to Dismiss Danfoss' Counterclaim with Prejudice**

As in Liberty's Motion for Summary Judgment and Motion in Limine to Exclude Testimony and Evidence Related to Classification Codes, Liberty's Motion to Dismiss Defendant's Counterclaim with Prejudice argues that Danfoss' counterclaim should be dismissed because Danfoss failed to exhaust its administrative remedies for premium disputes. *See* DE 45. For the same reasons set forth above, the Court finds that Liberty has failed to show that the counterclaim should be dismissed on this basis.

Liberty raises three other arguments in support of a dismissal with prejudice. *See* DE 45. First, Liberty argues Danfoss cannot show it suffered any damages because Danfoss did not actually pay any of the additional premium to which it objects. *Id.* at 2, 4-6. Second, Danfoss argues that the counterclaim is barred by the common law litigation privilege, which protects acts occurring during the course of a judicial proceeding. *Id.* at 3, 7-8. Third, Liberty argues the counterclaim improperly "lumps separate claims against [the two Plaintiffs] on two separate contracts into a single count, without articulating the factual basis for each party's respective liability on those separate contracts." *Id.* at 8-9.

The initial briefing on Liberty's Motion to Dismiss was based on Florida, Maryland and New York law, depending on the parties' evolving positions on the choice-of-law issue. *See* DE 45, 51, 56. Following the Court's choice-of-law ruling, *see* DE 84, the parties filed supplemental New York authority on this issue. *See* DE 86, 93, 103-04, 109. Consistent with the Court's prior choice-of-law ruling, the Court finds that the issues raised in Liberty's Motion to Dismiss Defendant's Counterclaim with Prejudice are governed by New York law, because Danfoss'

common law counterclaim arises from the parties' insurance policy, which is a contract that was made in New York. *See generally Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (the rule of *lex loci contractus* "directs that, in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract was made, *i.e.*, where the last act necessary to complete the contract is done").

1) **Danfoss' counterclaim should be re-pled to clarify what claims Danfoss is bringing and the factual basis therefor.**

Before discussing the issues raised in Liberty's original Motion to Dismiss Defendant's Counterclaim with Prejudice, *see* DE 45, the Court addresses an issue raised by the parties' notices of supplemental authority. In its initial notice of supplemental authority, Danfoss cites *New York University v. Continental Insurance Co.*, 662 N.E.2d 763 (N.Y. 1995) (hereinafter "*NYU*") for the proposition that "[a] *separate* cause of action for breach of the implied covenant of good faith and fair dealing may be maintained ***in addition to a breach of contract claim*** under New York law." DE 86-1 at 3 (emphasis added). Both parties then cite this case as authority for why Danfoss can or cannot state a claim for punitive damages. *See* DE 93 (Liberty supplemental authority); DE 109 (Danfoss supplemental authority).

As discussed further *infra*, in *NYU* the New York Court of Appeals held that a plaintiff cannot recover punitive damages for a breach of contract claim unless the defendant's conduct is, *inter alia*, "actionable as an independent tort[.]" *NYU*, 662 N.E.2d at 287. Thus, under New York law, "[w]here a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." *Id.* In *NYU*, the New York Court of Appeals found that the plaintiff's allegations "amount[ed] to nothing more than a claim

based on the alleged breach of the implied covenant of good faith and fair dealing, and the use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages." *Id.* at 290. Moreover, the court found that this "cause of action is duplicative of the first cause of action for breach of contract and should have been dismissed." *Id.* (citing *Apfel v. Prudential-Bache Secs., Inc.*, 183 A.D.2d 439, 583 N.Y.S.2d 386 (N.Y. App. Div. 1992)); *see also* DE 86-1 (Danfoss' notice of supplemental authority, citing *Quick Response Commercial Div., LLC v. AON Risk Servs. of Illinois, Inc.*, No. 1:12-cv-1088, 2012 WL 6021438 (Dec. 4, 2012), which dismissed claim for breach of the implied covenant of good faith and fair dealing as duplicative of a breach of contract claim).

*NYU*'s holding that the claim for breach of contract and the claim for breach of the implied covenant of good faith and fair dealing were duplicative reveals an underlying ambiguity in Danfoss' counterclaim. Under *NYU* and the line of cases referred to therein, "[A] claim for breach of the covenant of good faith and fair dealing will be duplicative of a breach of contract claim where the claims are based on the same allegations or where the same conduct is the predicate for both claims." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012). "[A] plaintiff may bring two breach of contract claims, one based on breach of the express terms and the other based on breach of the implied duty, as long as they are supported by factually distinct allegations." *Id.* (internal citation and quotation marks omitted); *see also Orient Overseas Assocs. v. XI Ins. Am., Inc.*, 132 A.D.3d 574, 18 N.Y.S.3d 361, 384 (N.Y. App. Div. 2015) (finding plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing were duplicative, citing *NYU*, where "plaintiff is complaining that [defendant], in bad faith, has not performed their agreement in accordance with plaintiff's

understanding of it"); *Fleisher v. Phoenix Life Ins. Co.*, 858 F.Supp.2d 290, 299 (S.D.N.Y. 2012) ("To avoid redundancy, 'Claims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract.'").

Liberty's counterclaim is entitled "BREACH OF CONTRACT *AND* BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING." DE 38 at 6 (emphasis added). The counterclaim alleges an express breach of Liberty's contractual obligation to "assign proper work classifications" to Danfoss' employees. *Id.* at 10 ¶ 24. The counterclaim also alleges that, "[t]hrough [its] actions and inactions as further described herein, [Liberty] demonstrated an arbitrary and capricious indifference to Danfoss' financial interests," and thereby breached the covenant of good faith and fair dealing. *Id.* at 11 ¶ 27. It is not clear to what extent this reference to "actions and inactions" refers to the decision of Liberty's auditor to re-classify Danfoss' employees, or to other actions alleged in the counterclaim, such as: the failure of Liberty's auditors to visit Danfoss' locations and observe the employees at work, *see id.* at 20 ¶¶ 74-75; the making of allegedly unreasonable requests for information during the audits, *see id.* at 20 ¶ 76; the decision to file the current lawsuit, *see id.* at 21 ¶ 70; violation of the parties' past practice of only raising the premium by 25% when information as missing, *see id.* at 11-12, 21 ¶¶ 29-31, 33, 79; or the implementation of some sort of national scheme to collect inflated worker's compensation premiums, due to Liberty's decision to exit the worker's compensation insurance market, *see id.* at 6-7 ¶¶ 1-5.

As Danfoss' counterclaim is currently pled, it appears that Danfoss may be bringing two claims in the same count: a breach of contract claim and a breach of the implied covenant of good faith and fair dealing claim. It is not clear whether these two claims are based on the same behavior by Liberty, and therefore whether they are duplicative. Accordingly, the counterclaim

should be re-pled. *See generally* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."); 5A Fed. Prac. & Proc. Civ. § 1324 (3d ed.) ("Despite the express language of Rule 10(b) that more than one transaction must be involved before separate statements of claims are necessary, the federal courts consistently have required separate statements when separate claims are pleaded, notwithstanding the fact that the claims arose from a single transaction."); *see also Apothecary Dev. Corp. v. City of Marco Island, Fla.*, No. 2:10-CV-392-FTM-36, 2011 WL 1071448, at *2 (M.D. Fla. Mar. 18, 2011) ("It is impermissible to combine multiple claims with different legal standards into one count.").

The Court acknowledges that Liberty's Motion to Dismiss Defendant's Counterclaim with Prejudice, which was filed prior to this Court's choice-of-law ruling, did not explicitly argue that Danfoss' counterclaim pleads two potentially duplicative claims in one count. *See* DE 45. However, both parties' citation to *NYU*, as well as their consideration of the closely related issue of punitive damages, put Danfoss on notice of this ambiguity in its complaint. *See generally Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (holding that a district court may *sua sponte* dismiss an action "as long as the procedure employed is fair"); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1071-72 (11th Cir. 2007) (affirming district court's *sua sponte* dismissal of statutory fraud claims because the claims failed to comply with the specificity requirements of Rule 9(b) and the district court "did not foreclose the plaintiffs' opportunity to address this deficiency by dismissing the claim *sua sponte*," since it granted leave to amend). Given the procedural history of this case—and particularly the fact that the counterclaim was filed prior to this Court's ruling on the choice-of-law issue—the Court hereby grants Danfoss leave to amend its counterclaim to address this issue.

Because the other issues raised in Liberty's Motion to Dismiss Defendant's Counterclaim with Prejudice may arise again in the context of an amended counterclaim, the Court will discuss them below. The Court notes, however, that the ambiguities in Danfoss' counterclaim—that is, whether Danfoss is bringing a claim for breach of an express contract term, breach of the implied covenant of good faith and fair dealing, or both, and the factual basis for each—also make it difficult for the Court to issue a definitive ruling on many of these issues.

    **2) Whether Danfoss' may recover attorney's fees expended in this action**

Liberty has moved to dismiss Danfoss' counterclaim on the grounds that Danfoss could never prove damages, because Danfoss has not paid the portions of the premiums to which it objects in the counterclaim. *See* DE 45 at 5-6. Danfoss responds that it could recover, *inter alia*, attorney's fees expended in defending against Liberty's breach of contract claims in this action. *See* DE 51 at 7. In their notices of supplemental authority, both parties cite various New York authorities as to why Danfoss can or cannot recover attorney's fees. *See* DE 86-1; DE 93.

In support of its claim for attorney's fees, Danfoss first cites *In re New York Skyline, Inc.*, 471 B.R. 69 (Bankr. S.D.N.Y. 2012) for the proposition that attorney's fees may be recovered on a contract claim where plaintiff demonstrates defendant has acted in bad faith. *See* DE 86-1 at 1-2 (notice of supplemental authority). *New York Skyline* noted that the U.S. Supreme Court had recognized an exception to the "American Rule" of attorney's fees, "when a losing party willfully disobeys a court order or has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 89 (internal citation and quotation marks omitted). However, *New York Skyline* explicitly held that, in that case, the plaintiff's claim of "a bad faith of breach of contract did not satisfy the bad faith exception," explaining:

    The bad faith exception to the American Rule is rooted in the court's inherent power to supervise and control its own proceedings. *Oliveri v. Thompson,* 803

F.2d 1265, 1272 (2d Cir.1986). A party is not entitled to attorneys' fees on grounds that a party's **_business conduct_** was "larcenous," "nefarious," "villain[ous]" or simply "[o]ld fashioned piracy." *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,* 782 F.2d 329, 344 (2d Cir.1986). In applying the bad faith exception, the appropriate focus for the court is

> **_the conduct of the party in instigating or maintaining the litigation_**, for an assessment of whether there has been substantive bad faith as exhibited by, for example, its pursuit of frivolous contentions, or procedural bad faith as exhibited by, for example, its use of oppressive tactics or its willful violations of court orders.

*Id.* at 345.

*New York Skyline*, 471 B.R. at 89-90 (emphasis added). In the present case, Danfoss' counterclaim, as currently pled, is based on Liberty's business conduct rather than Liberty's conduct in this litigation. Accordingly, Danfoss could not recover attorney's fees under this theory.

Second, Danfoss argues that it can recover attorney's fees as consequential damages in the context of a first-party insurance coverage dispute.[7] *See* DE 86-1 (citing *Chernish v. Mass. Mutual Life Ins. Co.*, No. 5:08-cv-0957 (GHL), 2009 WL 385418, at *5 (N.D.N.Y. Feb. 10, 2009)). For many years, New York "maintained the traditional view that an insurer's failure to make payments or provide benefits in accordance with a policy of insurance constitutes merely a breach of contract, which is remedied by contract damages[.]" *Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 78, 730 N.Y.S.2d 272, 276 (2001). "Under the traditional analysis, because insurance policies are viewed as contracts for the payment of money only, the damages available for an insurer's failure to pay or provide benefits has been limited to the amount of the policy plus interest." *Id.* Recently, however, the New York Court of Appeals recognized that "limiting an insured's damages to the amount of the policy, i.e., money which should have been paid the

---

[7] The Court notes that the present case does not involve a dispute over coverage, but rather a dispute over the calculation of premiums. As neither party attempts to distinguish this case law on this ground, however, the Court assumes, for purposes of the present motions, that this case law is applicable here.

insurer in the first place, plus interest, does not place the insured in the position it would have been in had the contract been performed" and allowed an insured to recover reasonably foreseeable consequential damages, where the insurance policy provided for "business interruption coverage" and the insurer allegedly denied a claim in bad faith. *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 886 N.E.2d 127, 131-32 (N.Y. 2008); *see also Panasia Estates, Inc. v. Hudson Ins. Co.*, 886 N.E.2d 200, 203 (N.Y. 2008) (issued the same day as *Bi-Market*, holding that "consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting").

Despite this apparent expansion of the damages recoverable in first-party bad faith insurance claims, courts largely have not interpreted *Bi-Market* and *Panasia* as allowing the recovery of attorney's fees as consequential damages. *See Santoro v. GEICO*, 117 A.D.3d 1026, 1028, 986 N.Y.S.2d 572, 574 (N.Y. App. Div. 2014) (noting consequential damages were recoverable under *Panasia*, but "the only consequential damages asserted by the plaintiff are an attorney's fee and costs and disbursements resulting from this affirmative litigation, which are not recoverable"); *Goodfellow v. Allstate Indem. Co.*, No. 14–CV–642S, 2014 WL 7384239, at *4 (W.D.N.Y. Dec. 29, 2014) (finding plaintiff could not recover attorney's fees, costs, and litigation expenses as a form of consequential damages); *Quick Response*, 2012 WL 6021438, at *2 ("There is abundant authority from New York courts that the general rule is that 'an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.' . . . The Court agrees that this is the current state of the law."); *see also Woodworth v. Erie Ins. Co.*, No. 05-cv-6344CJS, 2009 WL 1652258, at *5 (W.D.N.Y.

June 12, 2009) ("Nothing in *Bi-Economy* or any post-*Bi-Economy* authority cited by the parties suggests that the New York Court of Appeals intended through its *Bi-Economy* decision to alter in the insurance context the traditional American rule that each party should bear its own attorneys' fees."), *report & recommendation adopted at* 2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009). *But see In re New York Skyline*, 471 B.R. at 91 (finding that *Bi-Economy* and *Panasia* "stand for the proposition that an insured can recover consequential damages including, possibly, attorneys' fees," and noting, "*Bi-Economy* did not even mention attorneys' fees and while *Panasia* identified attorney fees as part of the insured's claim, it did not hold that they were recoverable as consequential damages").[8]

Lastly, Danfoss suggests that it can recover attorney's fees because this dispute involves "more than an arguable difference of opinion between carrier and insured over coverage." DE 86-1 (citing *Quick Response*, 2012 WL 6021438, at *2). This language originated in *Sukup v. State*, 227 N.E.2d 842 (N.Y. 1967), in which the New York Court of Appeals stated:

> It is equally well settled that an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk . . . .
>
> It would require more than an arguable difference of opinion between carrier and insured over coverage to impose an extra-contractual liability for legal expenses in a controversy of this kind. It would require a showing of such bad faith in denying coverage that ***no reasonable carrier would, under the given facts, be expected to assert it.***

*Id.* at 844 (emphasis added and citations omitted); *see also Ebrahimian v. Nationwide Mut. Fire Ins. Co.*, 960 F.Supp.2d 405, 417 (E.D.N.Y. 2013) (noting that "[t]here have been several cases

---

[8] The Court notes there is a narrow exception providing that attorney's fees are recoverable when the insured "has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy applications." *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1085 (N.Y. 1979). This exception is not applicable here, however, because it only applies to disputes over the insurer's duty to defend. *See New York Marine & General Ins. Co. v. Lafarge N. Am.*, 599 F.3d 102, 128 (2d Cir. 2010); *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67 (2d Cir. 2005).

since *Sukup* in which the courts, while acknowledging a cause of action for bad faith, found that the plaintiff was unable to meet the standard for that cause of action," and finding plaintiffs in *Ebrahimian* likewise had not done so because "[a]t most, the Plaintiffs allege a general disapproval of [defendant's] investigation of their claim"); *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 70 (2d Cir. 2005) (noting this language, but finding it inapplicable because the insured never alleged bad faith in its complaint).

At this stage, Danfoss has not shown entitlement to fees under *Sukup* because, due to the above-discussed ambiguities its counterclaim, it is not clear whether it has "plead facts necessary to satisfy an independent claim for breach of the implied covenant claim or plausibly plead bad faith." *Quick Response*, 2012 WL 6021438 at *2. Because the Court cannot say with certainty that Danfoss could never state such a claim, however, Danfoss may attempt to state a claim for attorney's fees under *Sukup* in its amended counterclaim, if it can plead a plausible entitlement to fees on that basis.

### 3) Whether Danfoss can recover corporate resources it expended in responding to Liberty's allegedly "excessive and unreasonable" audit process

In addition to attorney's fees expended in this lawsuit, Danfoss argues that it could recover "damages as a result of having to expend substantial corporate resources . . . in response to [Liberty's] excessive and unreasonable audit process[.]" DE 51 at 7. Liberty replies that Danfoss cannot recover these damages because the policies required Danfoss to keep records of information needed to compute the premium and to provide such information to Liberty upon request. *See* DE 56 at 5-6 (relying on paragraphs F and G of the policies at DE 5-1 at 83 and DE 5-2 at 86). Liberty argues, "Danfoss knew when it secured these policies that it would be required to dedicate employee time responding to requests by Liberty for information in order to calculate premiums, and such employee time specifically contemplated by the parties' contracts

cannot be a source of damages." DE 56 at 6. Liberty's argument merely highlights that such damages were foreseeable, which is not a ground for finding them unrecoverable.

However, damages generally must be proximately caused by the defendant's alleged breach. *See Bi-Economy*, 886 N.E.2d at 129 ("It is well settled that in breach of contract actions the nonbreaching party may recover general damages which are ***the natural and probable consequence*** of the breach. . . . Special, or consequential damages, which do not so directly flow from the breach, are also recoverable in limited circumstances.") (emphasis added and quotation marks omitted); *Rodriguez v. Allstate Ins. Co.*, 931 N.Y.S.2d 462, 467 (N.Y. Sup. Ct. 2011) ("Consequential damages, designed to compensate a party for reasonably foreseeable damages, 'must be ***proximately caused by the breach***' and must be proven by the party seeking them," quoting 24 Lord, Williston on Contracts § 64:12, at 125 (4th ed.)) (emphasis added). Given the ambiguities in Danfoss' counterclaim discussed *supra*, it is not clear whether these damages were proximately caused by the breach. Insofar as Danfoss' claims for breach of contract or breach of the implied covenant of good faith and fair dealing are based on Liberty making unreasonable or bad faith requests for information during the audit, these damages may have been caused by the breach. Insofar as Danfoss' claims are based on other behavior outlined in the counterclaim, causation is clear. Accordingly, Danfoss may attempt to state a claim for corporate resources expended in response to the audit process in its amended counterclaim, to the extent it is able to show causation.

### 4)  Whether Danfoss can recover punitive damages

In its Motion to Dismiss, Liberty argues Danfoss is not entitled to punitive damages because a breach of contract claim, in the absence of an independent tort, will not support punitive damages. DE 45 at 5-6. The New York Court of Appeals has outlined "the pleading

elements required to state a claim for punitive damages as an additional and exemplary remedy when the claim arises from a breach of contract":

> (1) [D]efendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in *Walker v. Sheldon,* 10 N.Y.2d 401, 404–405, 223 N.Y.S.2d 488, 179 N.E.2d 497, *supra;* (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally[.]

*NYU*, 662 N.E.2d at 767 (citing *Rocanova v. Equitable Life Assurance Soc'y*, 634 N.E.2d 940 (1994)). In *NYU*, the New York Court of Appeals found that NYU was not entitled to punitive damages because it "fail[ed] to state a tort independent of the contract." *Id.* at 770. The court held:

> To the extent that plaintiff alleges that defendants engaged in a "sham" investigation to perpetuate their allegedly fraudulent scheme, those allegations *merely evidence plaintiff's dissatisfaction with defendants' performance of the contract obligations*. Indeed, plaintiff concedes that defendants conducted an investigation, but argues that it provided an inadequate basis for defendants to deny plaintiff's claim. That allegation does not state a tort claim, it merely raises a question for the fact finder determining the breach of contract claim.
>
> . . .
>
> Plaintiff alleges in its second cause of action that defendants' actions in failing to adequately investigate, in denying payment of the claim, and in failing to renew the policy after assertion of the claim were "careless, negligent, reckless and vindictive" and violated the laws of this State. Plaintiff's claim *amounts to nothing more than a claim based on the alleged breach of the implied covenant of good faith and fair dealing*, and the use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages[.]

*Id.* at 769-70 (emphasis added); *see also Dinstber v. Allstate Ins. C.*, 110 A.D.3d 1410, 1411 (N.Y. App. Div. 2013) ("Here, plaintiff seeks an award of punitive damages based upon his allegation that defendant engaged in "bad faith tactics" by failing to promptly investigate his no-fault claim and failing to renew his insurance policy. Such claim does not allege a breach of duty distinct from defendant's contractual obligations."); *O'Keefe v. Allstate Ins. Co.*, 90 A.D.3d 725, 726 (N.Y. App. Div. 2011) (finding punitive damages were not warranted in first-party bad faith

action alleging that the insurer fraudulently undertook "to avoid paying plaintiffs the amounts specified in the insurance policy," because "[t]his case is, in effect, simply a private breach of contract dispute between the insurer and its insureds with no great implications").

In the present case, Danfoss' allegation that Liberty misclassified Danfoss' employees during the audit process is closely analogous to the allegation at issue in *NYU*, because this "merely evidence[s] plaintiff's dissatisfaction with defendants' performance of the contract obligations." *NYU*, 662 N.E.2d at 769; *see also* DE 38 at 10 ¶ 24 (alleging that Liberty's "failure to assign proper work classifications, rates and premium basis to the insurance contracts as promised in the insurance contracts represents an express breach of contract by plaintiffs"). In its notices of supplemental authority, Danfoss cites the language from *NYU* stating that "[w]here a party . . . engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim" and that a "defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations." *See* DE 86-1 at 3; DE 109 at 2. As Danfoss' counterclaim is currently pled, however, it is not clear what extra-contractual behavior or duty Danfoss is intending to invoke. Because, at this stage, the Court cannot say with certainty that Danfoss could never state a claim for punitive damages, Danfoss may attempt to state a claim for punitive damages in the amended counterclaim, if it can plausibly do so consistent with this case law.

**5)  Whether Danfoss' counterclaim is barred by the litigation privilege**

Liberty argues that Danfoss' counterclaim should be dismissed with prejudice because it is barred by the litigation privilege. *See* DE 45 at 7-8. Danfoss argues this is not a basis for dismissing the entirety of its counterclaim with prejudice, because the counterclaim relies on "numerous allegations relating to the actions (and omissions) of [Liberty] well before the filing

of this action[.]" DE 51 at 15. In its reply, Liberty appears to concede that the litigation privilege

would bar Danfoss' claims only insofar as Danfoss' claim is based on the initiation of this action.

*See* DE 56 at 9.

"Under New York law, statements made in the course of legal proceedings are absolutely

privileged if pertinent to the litigation." *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35,

48 (S.D.N.Y. 2015), *aff'd in relevant part,* No. 15-1121-CV, 2015 WL 7755633 (2d Cir. Dec. 2,

2015). At least one New York court has held that "[t]he judicial proceedings privilege applies to

causes of action other than defamation." *Hadar v. Pierce*, 111 A.D.3d 439, 440 (N.Y. App. Div.

2013). *But see Luedke v. Delta Air Lines, Inc.*, 159 B.R. 385, 394 (S.D.N.Y. 1993) ("The

restriction of this privilege to actions sounding in defamation or malicious prosecution comports

with the privilege's underlying purpose, which is to encourage parties to judicial proceedings to

'speak freely.'"). However, Liberty has not satisfactorily explained how the litigation privilege

bars Danfoss' counterclaim, which does not sound in defamation and is not based on statements

made in the course of a judicial proceeding. None of the case law Liberty cites applies the

privilege in context similar to the present one. *See* DE 104 (Liberty's notice of supplemental

authority on the litigation privilege issue); *see also* DE 109 (Danfoss' notice of supplemental

authority on this issue). Liberty relies on the following paragraph from Danfoss' counterclaim:

> [Liberty's] ***decision to file this action*** seeking the payment of over $938,000 from
> Danfoss reflecting extreme additional premiums for the two workers'
> compensation insurance contracts when Liberty in the past had followed the
> "standard procedure" of charging an additional 25% for the 010 policy issued to
> Danfoss constitutes a breach of the implied covenant of good faith and fair
> dealing in their insurance contracts.

DE 38 at 21 ¶ 79 (emphasis added). When read in context with the rest of the counterclaim,

Danfoss' counterclaim appears to be targeting Liberty's general decision to seek the premiums

that Danfoss claims are inflated, rather than any specific statement made in the context of a

judicial proceeding. Accordingly, the counterclaim does not implicate the policy concerns giving rise to the judicial proceedings privilege, which therefore does not bar the counterclaim or counterclaims as currently pled. *See Luedke*, 159 B.R. at 394 (noting the privilege reflects a policy decision that the perceived social benefit in encouraging free speech outweighs the individual's underlying right to a good reputation).

> **6) Whether Danfoss' counterclaim should be dismissed without prejudice because it fails to separate its claims by policy or by counter-defendant**

Liberty's original Motion to Dismiss argues that Danfoss' counterclaim improperly "lumps separate [counter-]defendants together in a single count without distinguishing the factual basis for each defendant's liability." DE 45 at 9. The Court notes that Liberty appears to have abandoned this argument, as it is not mentioned in Liberty's reply or its notices of supplemental authority. *See* DE 56, 93, 103, 104. Because this issue might arise again upon the filing of an amended counterclaim, however, the Court has considered the argument and finds it is without merit.

A counterclaim against multiple defendants passes muster under Rule 8 where the factual allegations give each defendant fair notice of the nature of the claim and the grounds on which the claim rests. *See Joseph v. Bernstein*, No. 13–24355–CIV, 2014 WL 4101392, *3 (S.D. Fla. Aug. 2014); *see also Synergy Real Estate of SW Fla., Inc. v. Premier Prop. Mgmt. of SW Fla., LLC*, No. 2:11–cv–707–FtM–29UAM, 2013 WL 5596795, at *2 (M.D. Fla. Oct. 11, 2013). Danfoss' factual allegations are specific enough to give such notice. The Court also notes that, throughout the motion practice of this lawsuit, the two Plaintiffs have consistently referred to themselves as one entity, "Liberty," and they further assert that they are owned by the same company. *See* DE 56 (Liberty's reply in support of motion to dismiss, referring to Plaintiffs as "Liberty"); DE 48-2 at ¶ 1 (Liberty's statement of material facts in support of summary

33

judgment, referring to Plaintiffs collectively as "Liberty" and stating: "Liberty Mutual Group owns the Liberty carriers and administers all of the policies and programs of the latter."); DE 48-1 at ¶ 3 (Liberty's affidavit in support of summary judgment, noting that Liberty Mutual Group owns both Plaintiffs and "administers all of the policies and programs of" both Plaintiffs). Danfoss therefore is not necessarily required to separate out the claims by Plaintiff, as long as the claims give Liberty fair notice of the basis of the claims.

## IV.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiffs' Motion for Summary Judgment [DE 48] is **DENIED.**

2. Plaintiffs' Motion in Limine to Exclude Testimony and Evidence Related to Classification Codes [DE 89] is **DENIED.**

3. Plaintiffs' Motion to Dismiss Defendant's Counterclaim with Prejudice [DE 45] is **GRANTED** in part and **DENIED** in part.

4. Defendant's counterclaim [DE 38] is **DISMISSED** without prejudice. Defendant has until **Wednesday, December 30, 2015** to file an amended counterclaim. Plaintiffs shall file a response to the amended counterclaim by **Monday, January 11, 2016**.

5. In light of the Court's finding that the counterclaim must be amended, the jury trial scheduled for January 25, 2016 is **CANCELLED**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 16th day of December, 2015.

Robin L. Rosenberg

Copies furnished to:                  ROBIN L. ROSENBERG
Counsel of record                      UNITED STATES DISTRICT JUDGE